UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| IN RE: | Case No. 18-30046 |
| Bill Walker Haney<br>Sheila Bernice Haney | Chapter 7 |
| | Judge Alan C. Stout |
| Debtors. | |
| | **RENEWED MOTION OF U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ABANDONMENT (PROPERTY LOCATED AT 2902 DOTSON DRIVE, LOUISVILLE, KY 40223)** |

Now comes U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT (the "Movant") moves this Court, under §§ 361, 362, 363, 554 and other sections of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code") and under Rules 4001, 6007 and other rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order conditioning, modifying or dissolving the automatic stay imposed by § 362 of the Bankruptcy Code and for abandonment of property under § 554 of the Bankruptcy Code. In support of this Renewed Motion, the Movant states:

## MEMORANDUM IN SUPPORT

1

1.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The venue of this case and this Renewed Motion is proper under 28 U.S.C. §§ 1408 and 1409.

2.    Prior to the filing of this bankruptcy petition, Bill W. Haney executed a promissory note (the "Note") which is in the possession of Movant.

3.    To secure payment of the Note and performance of the other terms contained in it, Bill W. Haney and Sheila B. Haney executed a Mortgage (the "Security Agreement"). The Security Agreement granted a lien on the real and/or personal property (the "Collateral") owned by Bill W. Haney, located at 2902 Dotson Drive, Louisville, KY 40223 and more fully described in the Security Agreement. The lien was duly perfected by the recording of the Security Agreement in the County Clerk's Records.

4.    The Movant is entitled to enforce the Note and Security Agreement. The documents establishing this right are attached hereto and include the Note, applicable endorsement(s) and/or alonges, if any; and the Security Agreement and any applicable assignment(s). Movant is the holder of the original Note. Possession of the original note gives Creditor standing to enforce the obligations secured thereby. *Stevenson v. Bank of Am.*, 359 S.W.3d 466, 470 (Ky. Ct. App. 2011).

5.    The Debtor's schedules have the value of the Collateral as $900,000.00.

6.    Other persons/entities that may claim an interest in the Collateral:

Internal Revenue Service (Tax Lien) $40,731.60

Louisville Metro Government (Judgment) $10,250.57

Capital One Mortgage (Mortgage Lien) $642,099.00

2

7.      As of the October 3, 2019, there is currently due and owing on the Note the outstanding principal balance of  $622,356.50, plus interest accruing thereon at the rate of 4.2500% per annum along with any fees, costs, escrow advances or other expenses that may have been incurred since the petition date as are allowed by law.

8.      The Movant is entitled to relief from the automatic stay under §§ 362(d)(1) and/or 362(d)(2) as Creditor lacks adequate protection as to its secured interest in the Collateral and there is little or no equity in the Collateral for the benefit of the estate.

9.      Movant has attached as Exhibit A, a copy of the proof of claim filed in this case by Movant, along with copies of the supporting documents establishing the Movant's perfected security interest in the above described collateral.

WHEREFORE, Movant prays that the automatic stay imposed by 11 U.S.C. § 362 be terminated in all respects as against said Movant, and its successors and assigns; and that the Trustee's interest be abandoned pursuant to 11 U.S.C. § 554, Bankruptcy Rule 6007(b) and LBR 4001-1.

**The trustee will have 14 days from the conclusion of the Meeting of Creditors to object to abandonment of the property of the estate that is the subject of the motion. If no objection or motion for extension of time is filed prior to the expiration of this 14 day period, then the property**

will be deemed abandoned on the 15th day following the conclusion of the Meeting of Creditors,

subject to FRBP 9006(a)(1).

<u>/s/ Joel K. Jensen</u>
Joel K. Jensen
Bar Registration #81820
513-241-3100 x-3349

LERNER, SAMPSON & ROTHFUSS
Attorneys for Movant
P.O. Box 5480
Cincinnati, OH 45201-5480
(513) 241-3100
(513) 241-4094 Fax
(877) 661-7891 Toll Free Fax
wkybk@lsrlaw.com

## <u>NOTICE AND OPPORTUNITY FOR HEARING</u>

The undersigned certifies that a copy of the foregoing Renewed Motion for Relief from the Automatic Stay and for Abandonment of Property was electronically transmitted on October 21, 2019 via the Court's CM/ECF system to the following who are listed on the Court's Electronic Mail Notice list.

A hearing will be held only in the event a written responsive objection is timely filed and served.

Jan C. Morris – Attorney for Debtors
3rd Floor
125 S. 6th Street
Suite 300
Louisville, KY 40202
lmattys@bellsouth.net

William Reisz, Trustee
401 W. Main St.
Suite 1400
Louisville, KY 40202
wsreisz@hotmail.com

Office of the U.S. Trustee
Charles R. Merrill
Asst. U.S. Trustee
601 West Broadway #512
Louisville, KY 40202
ustpregion08.lo.ecf@usdoj.gov

The undersigned certifies that a copy of the foregoing Renewed Motion for Relief from the Automatic Stay and for Abandonment of Property was transmitted on October 21, 2019 via regular U.S. mail, postage pre-paid:

Bill Walker Haney
2902 Dotson Drive
Louisville, KY 40223

Sheila Bernice Haney
2902 Dotson Drive
Louisville, KY 40223

Internal Revenue Service - Creditor
P.O. Box 7346
Philadelphia, PA 19101

Louisville Metro Government - Creditor
Jefferson County Attorney's OfficeFiscal Court Building 531Court Place Suite
Louisville KY 40202

Capital One Mortgage                    /s/ Joel K. Jensen
P.O Box 21887                           Joel K. Jensen
Eagan, MN 55121                         Bar Registration #81820
                                        513-241-3100 x-3349

                                        LERNER, SAMPSON & ROTHFUSS
                                        Attorneys for Movant
                                        P.O. Box 5480
                                        Cincinnati, OH 45201-5480
                                        (513) 241-3100
                                        (513) 241-4094 Fax
                                        (877) 661-7891 Toll Free Fax
                                        wkybk@lsrlaw.com

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Bill Walker Haney |
| Debtor 2 | Sheila Bernice Haney |
| | (Spouse, if filing) |

United States Bankruptcy Court for the: Western District of KY

Case number 18-30046

# Exhibit A

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Capital One, N.A. |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☒ No |
| | ☐ Yes  From whom? _____ |

**3. Where should notices and creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Rushmore Loan Management Services<br>P.O. Box 55004<br>Irvine, CA 92619-2708 | Rushmore Loan Management Services<br>P.O. Box 52708<br>Irvine, CA 92619-2708 |
| Contact phone 888-504-6700 | Contact phone  888-504-6700 |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☒ No |
| | ☐ Yes   Claim number on court claims registry (if known) _____ Filed on _____<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No |
| | ☐ Yes |
| | Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2532

**7. How much is the claim?**

$648,337.62. Does this amount include interest or other charges?

☐ No

☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

Nature of property:

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: 2902 Dotson Drive
Louisville, KY 40223

Basis for perfection: Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:

Amount of the claim that is secured: $648,337.62

Amount of the claim that is unsecured: $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $29,220.48

Annual Interest Rate (when case was filed) 4.2500%

☐ Fixed

☒ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:   Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:*<br><br>☐ I am the creditor.<br><br>☒ I am the creditor's attorney or authorized agent.<br><br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br><br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct.<br><br>Executed on date  02/28/2018 |

/s/ Joel K. Jensen

Joel K. Jensen
Bar Registration #81820
513-241-3100 x-3349

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Joel K. Jensen |
|---|---|
| Title | Attorneys for Creditor |
| Company | Lerner, Sampson and Rothfuss, LPA |
| Address | 120 East Fourth Street, 8th Floor |
| | Cincinnati  OH  45202-4007 |

Contact phone   (513) 241-3100          Email  wkybk@lsrlaw.com

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

Case number: 18-30046

Debtor 1: Bill Walker Haney
Debtor 2: Sheila Bernice Haney

Last 4 digits to identify: 2532

Creditor: Capital One, N.A.
Servicer: Rushmore Loan Management Services, LLC

Fixed accrual/daily simple interest/other:
Fixed

## Part 2: Total Debt Calculation

Principal balance: $628,356.16

Interest due: $18,096.10

Fees, costs due: $1,885.36
Escrow deficiency for
Funds advanced $ 0.00

Less total funds on hand: $ 0.00

Total debt:
$648,337.62

## Part 3: Arrearage as of Date of the Petition

Principal & interest due: $27,335.12

Prepetition fees due: $1,885.36

Escrow deficiency for funds
advanced: $ 0.00

Projected escrow shortage: $ 0.00

Less funds on hand: $ 0.00

Total prepetition arrearage
$29,220.48

## Part 4: Monthly Mortgage Payment

Principal & interest: $3,416.89

Monthly escrow: $ 0.00

Private mortgage insurance: $ 0.00

Total monthly payment: $3,416.89
02/01/2018

## Part 5: Loan Payment History from First Date of Default

Official Form 410A            Mortgage Proof of Claim Attachment            Page 1 of 1

Mortgage Proof of Claim Attachment (12/15)

**Part 5: Loan Payment History from First Date of Default (Continued)**

Case No: 18-30046          Page 1 of 2          Debtor Last Name: Haney

| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees/Charges balance | Q. Unapplied Funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/17/16 | | | 11.50 | Property Inspection | 05/01/16 | | | | | 11.50 | | 648,935.07 | $ - | $ - | 463.50 | 110.04 |
| 06/29/16 | | 6,533.33 | | Payment | 06/01/16 | | 1,332.43 | 1,757.53 | | | | 647,602.64 | $ - | $ - | 475.00 | 110.04 |
| 06/23/16 | | | | Payment | 07/01/16 | | 1,336.04 | 1,753.92 | | | | 646,266.60 | $ - | $ - | 11.50 | 110.04 |
| 07/01/18 | | | | Payment | 08/01/16 | | 1,339.65 | 1,750.31 | | | | 644,926.95 | $ - | $ - | 11.50 | 110.04 |
| 07/01/18 | | 3,099.96 | | Principal Payment | 08/01/16 | | 3,090.00 | | | | | 641,836.95 | $ - | $ - | 11.50 | 110.04 |
| 07/08/16 | | 3,090.00 | | Bad Check Reversal | 08/01/16 | | (3,090.00) | | | | | 644,926.95 | $ - | $ - | 11.50 | 110.04 |
| 07/08/16 | | | | Bad Check Reversal | 08/01/16 | | (1,339.65) | (1,759.31) | | | | 644,926.95 | $ - | $ - | 11.50 | 110.04 |
| 07/18/16 | | 6,179.92 | | Payment | 08/01/16 | | 1,339.65 | 1,750.31 | | | | 644,926.95 | $ - | $ - | 11.50 | 110.04 |
| 07/18/16 | | | | Payment | 08/01/16 | | 1,343.28 | 1,746.68 | | | | 643,583.67 | $ - | $ - | 11.50 | 110.04 |
| 07/18/16 | | | | Payment | 09/01/16 | | 3,288.92 | | | | | 640,294.75 | $ - | $ - | 11.50 | 110.04 |
| 07/18/16 | | 3,268.92 | | Principal Payment | 08/01/16 | | | | | | | 640,294.75 | $ - | $ - | 166.00 | |
| 08/16/16 | | | 154.50 | Late Charge Assessed | 09/01/16 | | | | | 154.50 | | 640,294.75 | $ - | $ - | 320.50 | |
| 10/17/16 | | | 154.50 | Late Charge Assessed | 09/01/16 | | | | | 154.50 | | 640,294.75 | $ - | $ - | 332.00 | |
| 10/21/16 | | | 11.50 | Property Inspection | 09/01/16 | | | | | 11.50 | | 640,294.75 | $ - | $ - | 332.00 | |
| 10/21/16 | | 6,179.92 | | Payment | 09/01/16 | | 1,355.83 | 1,734.13 | | | | 640,294.75 | $ - | $ - | 332.00 | |
| 11/16/16 | | | | Payment | 10/01/16 | | 1,359.50 | 1,730.46 | | | | 637,529.42 | $ - | $ - | 486.50 | |
| 11/25/16 | | 3,985.48 | 154.50 | Payment | 11/01/16 | | | | | 154.50 | | 638,938.97 | $ - | $ - | 23.00 | |
| 12/16/16 | | | | Payment | 11/01/16 | | 1,363.18 | 1,726.78 | | | | 637,979.42 | $ - | $ - | 177.50 | |
| 12/22/16 | | 3,234.46 | 154.50 | Payment | 12/01/16 | | | | | 154.50 | | 636,216.24 | $ - | $ - | 23.00 | |
| 01/17/17 | | | | Payment | 01/01/17 | | 1,366.67 | 1,723.09 | | | | 636,216.24 | $ - | $ - | 177.50 | |
| 01/17/17 | | | 154.50 | Loan Charge Assessed | 01/01/17 | | | | | 154.50 | | 634,849.37 | $ - | $ - | 332.00 | |
| 02/16/17 | | | 154.50 | Loan Charge Assessed | 01/01/17 | | | | | 154.50 | | 634,849.37 | $ - | $ - | 332.00 | |
| 02/20/17 | | | 11.50 | Property Inspection | 01/01/17 | | | | | 11.50 | | 634,849.37 | $ - | $ - | 340.50 | |
| 02/16/17 | | | 154.50 | Late Charge Assessed | 01/01/17 | | | | | 154.50 | | 634,849.37 | $ - | $ - | 486.50 | |
| 02/16/17 | | | 11.50 | Property Inspection | 01/01/17 | | | | | 11.50 | | 634,849.37 | $ - | $ - | 509.50 | |
| 03/27/17 | | 485.50 | | Payment | 02/01/17 | | 1,370.58 | 1,719.38 | | | | 633,478.79 | $ - | $ - | 509.50 | |
| 04/11/17 | | 3,089.96 | | Payment | 02/01/17 | | 1,374.29 | 1,715.67 | | | | 632,104.50 | $ - | $ - | 509.50 | |
| 04/11/17 | | | 170.84 | Payment | 02/01/17 | | | | | 170.84 | | 632,104.50 | $ - | $ - | 46.00 | |
| 04/18/17 | | 3,089.96 | | Payment | 04/01/17 | | 1,378.01 | 1,711.95 | | | | 630,726.49 | $ - | $ - | 216.84 | |
| 04/25/17 | | 3,416.89 | | Payment | 05/01/17 | | 1,183.07 | 2,233.82 | | | | 629,543.42 | $ - | $ - | 216.84 | |
| 05/16/17 | | | 170.84 | Property Inspection | 05/01/17 | | | | | 170.84 | | 629,543.42 | $ - | $ - | 216.84 | |
| 05/30/17 | | 3,766.57 | 11.50 | Property Inspection | 06/01/17 | | 1,187.28 | 2,229.63 | | 11.50 | | 628,356.16 | $ - | $ - | 228.34 | |
| 06/01/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 3,416.89 | | | | | | 628,356.16 | $ - | $ - | 228.34 | |
| 06/16/17 | | | 170.84 | Late Charge Assessed | 06/01/17 | 3,416.89 | | | | 170.84 | | 628,356.16 | $ - | $ - | 228.34 | |
| 07/07/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 6,833.78 | | | | | | 628,356.16 | $ - | $ - | 46.00 | |
| 07/17/17 | | | 170.84 | Late Charge Assessed | 06/01/17 | 6,833.78 | | | | 170.84 | | 628,356.16 | $ - | $ - | 57.50 | |
| 07/24/17 | | | 11.50 | Property Inspection | 06/01/17 | 6,833.78 | | | | 11.50 | | 628,356.16 | $ - | $ - | 57.50 | |
| 08/01/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 10,250.67 | | | | | | 628,356.16 | $ - | $ - | 238.34 | |
| 08/18/17 | | | 170.84 | Late Charge Assessed | 06/01/17 | 10,250.67 | | | | 170.84 | | 628,356.16 | $ - | $ - | 228.34 | |
| 08/18/17 | | | 11.50 | Property Inspection | 06/01/17 | 10,250.67 | | | | 11.50 | | 628,356.16 | $ - | $ - | 228.34 | |
| 09/01/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 13,667.56 | | | | | | 628,356.16 | $ - | $ - | 399.18 | |
| 10/01/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 17,084.45 | | | | | | 628,356.16 | $ - | $ - | 399.18 | |
| 11/01/17 | 3,416.89 | | | Regular Monthly Mortgage Payment Amount | 06/01/17 | 20,501.34 | | | | | | 628,356.16 | $ - | $ - | 410.68 | |
| 11/15/17 | | | 11.50 | Property Inspection | 06/01/17 | 20,501.34 | | | | 11.50 | | 628,356.16 | $ - | $ - | 593.02 | |
| 11/16/17 | | | 170.84 | Late Charge Assessed | 06/01/17 | 20,501.34 | | | | 170.84 | | 628,356.16 | $ - | $ - | 604.52 | 775.36 |

| 11/22/2017 | 810.00 | 810.00 | Foreclosure Attorney Fees | 06/01/17 | $ 20,501.34 | 810.00 | $ 628,356.16 | $ - | $ 1,585.36 | $ - |
| 11/22/2017 | | 300.00 | Foreclosure Title Cost | 06/01/17 | $ 20,501.34 | 300.00 | $ 628,356.16 | $ - | $ 1,885.36 | $ - |
| 12/01/17 | 3416.89 | | Regular Monthly Mortgage Payment Amount | 06/01/17 | $ 23,918.23 | | $ 628,356.16 | $ - | $ 1,885.36 | $ - |
| 01/01/18 | 3416.89 | | Regular Monthly Mortgage Payment Amount | 06/01/17 | $ 27,335.12 | | $ 628,356.16 | $ - | $ 1,885.36 | $ - |

# ORIG1NAL

# ADJUSTABLE RATE NOTE

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 2, 2012                    LOUISVILLE, KENTUCKY

2902 DOTSON DRIVE
Louisville, KENTUCKY 40223
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$710,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FIRST CHOICE LOAN SERVICES, INC.**
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.250%**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on **April 1, 2012**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2042**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**FIRST CHOICE LOAN SERVICES, INC**
**500 CAMPUS DRIVE, SUITE 102**
**MORGANVILLE, NEW JERSEY 07751**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$3,089.96**. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR  Single Family - Fannie Mae UNIFORM INSTRUMENT                    Form 3526  6/01
Page 1 of 4

IDS, Inc.

Borrower(s) Initials

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **1st** day of **March, 2017**, and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE HALF** percentage points **(2.500%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point **(0.125%)**. Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **5.250%** or less than **2.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points from the rate of interest I have been paying for the preceding **TWELVE** months. My interest rate will never be greater than **9.250%**.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

---

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR  Single Family - Fannie Mae UNIFORM INSTRUMENT          Form 3526  6/01

IOS, Inc.                                     Page 2 of 4

Borrower(s) Initials

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charges for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

---

MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR  Single Family – Fannie Mae UNIFORM INSTRUMENT          Form 3526  6/01
                                              Page 3 of 4

IDS, Inc.

                                                                        Borrower(s) Initials _____ _____

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BILL W. HANEY          -Borrower                                      -Borrower
                                                                          *(Sign Original Only)*



## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

*This*      *day of*

*Note Date:*      **February 2, 2012**

ORIG1NAL

*Original Loan Amount:*   $710,000.00

*Interest Rate:*      3.250%

*Maturity Date:*      **March 1, 2042**

*Borrower(s) Name(s):*   **BILL W. HANEY**

*Property Address:*      **2902 DOTSON DRIVE**
**Louisville, KENTUCKY 40223**

*Pay to the order of:*      **ING Bank, FSB**

Without Recourse

**FIRST CHOICE LOAN SERVICES, INC**

_____
*Signature of Duly Authorized Officer*

__Joseph Baio_____
*Typed Name of Signatory*

*Title of Signatory:*   **SVP – Capital Markets** _____

IDS, Inc

MB 12724 PG 0584

*Record and Return*

TransAmerican Title
& Settlement Services
111 E. Palmetto Park Road
Boca Raton, FL 33432

WHEN RECORDED, MAIL TO:
FIRST CHOICE LOAN SERVICES, INC
500 CAMPUS DRIVE, SUITE 102
MORGANVILLE, NEW JERSEY 07751

This instrument was prepared by:
FIRST CHOICE LOAN SERVICES, INC
500 CAMPUS DRIVE, SUITE 102
MORGANVILLE, NEW JERSEY 07751

_____ [Space Above This Line For Recording Data] _____

# MORGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **February 2, 2012**, together with all Riders to this document.

**(B) "Borrower"** is **Bill W. Haney and Sheila B. Haney, husband and wife as Joint Tenants**. Borrower is the mortgagor under this Security Instrument.

**(C) "Lender"** is **FIRST CHOICE LOAN SERVICES, INC**, organized and existing under the laws of **The State of New Jersey**.
Lender's mailing address is **500 CAMPUS DRIVE, SUITE 102, MORGANVILLE, NEW JERSEY 07751**, and the address of Lender's principal place of business is **500 CAMPUS DRIVE, SUITE 102, MORGANVILLE, NEW JERSEY 07751**. Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **February 2, 2012**. The Note states that Borrower owes Lender **SEVEN HUNDRED TEN THOUSAND AND NO/100 Dollars (U.S. $710,000.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2042**. This Security Instrument secures 150% of the principal amount of the Note, but any amount secured in excess of the amount stated in the second sentence of this paragraph must be a "Protective Advance" as defined by Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal, commonly called "negative amortization").

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

_____

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3018  1/01  Revised  12/00
                                   Page 1 of 13

IDS, Inc.                                                    Borrower(s) Initials

MB 12724 PG 0585

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] VA Rider |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |
| [ ] Other (Specify) | | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of **Jefferson**:

**KENTUCKY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3018  1/01  Revised  12/10
Page 2 of 13

IDS, Inc.    Borrower(s) Initials _____

MB 1 2724 PG 0586

See attached Exhibit "A"

which currently has the address of: **2902 DOTSON DRIVE**
                                   **Louisville, KENTUCKY 40223**                    ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the

---

KENTUCKY - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    **Form 3018  1/01  Revised 12/10**
                                           Page 3 of 13
IDS, Inc.                                                                 Borrower(s) Initials

MB 1 2 7 2 4 PG 0 5 8 7

Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 4 of 13

Form 3018  1/01  Revised  12/19

IDS, Inc.

Borrower(s) Initials ___

MB 12724 PG 0588

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of

---

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 5 of 13

Form 3018  1/01  Revised 12/10

IDS Inc.

Borrower(s) Initials

MB 1 2 7 2 4 PG 0 5 8 9

progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority

KENTUCKY - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Page 6 of 13

IDS, Inc.

Form 3018  1/01  Revised 12/10

Borrower(s) Initials

MB 12724 PG 0590

over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

. **(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

---

KENTUCKY - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                              Form 3018  1/01 Revised 12/10
                                                    Page 7 of 13

IDS, Inc.                                                                              Borrower(s) Initials

HB 12724 PG 0591

**(b)** Any such agreements will not affect the rights Borrower has — if any — with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**KENTUCKY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3018  1/01  Revised 12/10
Page 8 of 13

IDS, Inc.                                                                                          Borrower(s) Initials

MB 1.2724 PG 0592

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument

---

KENTUCKY - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
Page 9 of 13

IDS, Inc.

Form 3018   1/01, Revised  12/10

Borrower(s) Initials

MB 1:27 2 4 PG 0 5 9 3

is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and

---

**KENTUCKY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                Form 3018  1/01, Revised  12/10

Page 10 of 13

IDS, Inc.                                                                                                       Borrower(s) Initials _____

MB 1 2724 PG 0594

this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3018 1/01 Revised 12/10
Page 11 of 13

IOS, Inc.                            Borrower(s) Initials

MB 1 2 7 2 4 PG 0 5 9 5

acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Taxes and Assessments on Mortgage Insurance Premiums.** If mortgage insurance premiums are required to be paid by Borrower pursuant to Section 10, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

26. **Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

---

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 12 of 13

IDS, Inc

Form 3018 1/01 Revised 12/10

Borrower(s) Initials

MB 1 2 7 2 4 PG 0 5 9 6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ -Witness          _____ -Witness

_____ (Seal)                    _____ (Seal)
BILL W. HANEY          -Borrower                   SHEILA B. HANEY          -Borrower

STATE OF KENTUCKY, _____Jefferson_____ County ss:

The foregoing instrument was acknowledged before me this __2__ day of __February__, __2012__, by BILL W. HANEY and SHEILA B. HANEY, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she (they) executed the same for the purposes therein contained.

My Commission Expires: _____

_____
Notary Public

Michael J. Carter
Notary Public
State at Large, Kentucky
My Commission Expires on Aug. 21, 2014

KENTUCKY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3018  1/01  Revised 12/10
                                        Page 13 of 13
IDS, Inc.



**MB 1 2 7 2 4 PG 0 5 9 7**

### OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

*Exhibit*

**COMMITMENT
SCHEDULE A
continued**



### LEGAL DESCRIPTION

All that certain lot or parcel of land situate in the County of Jefferson, Commonwealth of Kentucky, and being more particularly described as follows:

Being Lot 27, Nutwood Subdivision, Section 2, plat of which is of record in **Plat and Subdivision Book 37, Page 78,** in the Office of the Clerk of Jefferson County, Kentucky

Being the same property conveyed by Warranty Deed:

| | |
|---|---|
| Grantor: | Amos Marin Construction Co. |
| Grantee: | Bill W. Haney and Sheila B. Haney, husband and wife |
| Dated: | 12/28/1990 |
| Recorded: | 12/31/1990 |

Address:         2902 Dotson Drive, Louisville, KY 40223

ORT Form 4308 A
Schedule A
Commitment (6/17/2006)

MB 1 2724 PG 0598

# ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*–Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **2nd day of February, 2012**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **FIRST CHOICE LOAN SERVICES, INC** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**2902 DOTSON DRIVE**
**Louisville, KENTUCKY 40223**
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **3.250%**. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
　**(A) Change Dates**
　The interest rate I will pay may change on the **1st day of March, 2017**, and on that day every **12th** month thereafter. Each date on which my interest rate could change is called a "Change Date."
　**(B) The Index**
　Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
　If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
　**(C) Calculation of Changes**

---

MULTISTATE ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR - Single Family
Fannie Mae Uniform Instrument　　　　　Page 1 of 3　　　　　　　　Form 3189  6/01

IDS, Inc.

Borrower(s) Initials _____

MB 1 2 7 2 4 PG 0 5 9 9

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE HALF** percentage points (**2.500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **5.250%** or less than **2.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points from the rate of interest I have been paying for the preceding **TWELVE** months. My interest rate will never be greater than **9.250%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18
of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**MULTISTATE ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR - Single Family**
**Fannie Mae Uniform Instrument**        Page 2 of 3                        Form 3189 6/01
IDS, Inc.                                                  Borrower(s) Initials

MB 12724 PG0600

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
BILL W. HANEY                -Borrower

_____ (Seal)
SHEILA B. HANEY             -Borrower

MULTISTATE ADJUSTABLE RATE RIDER – WSJ One-Year LIBOR - Single Family
Fannie Mae Uniform Instrument          Page 3 of 3          Form 3189  6/01
IOS, Inc.

Document No.: DN2012023640
By: TRANSAMERICAN
ed On:   02/17/2012   11:48:55
ees:                    59.00
r Tax:                    .00
Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Clerk: EVERAY

END OF DOCUMENT

BK 09904 PG 0146

*3*

**ORIG1NAL**

WHEN RECORDED, MAIL TO:
**FIRST CHOICE LOAN SERVICES, INC**
**500 CAMPUS DRIVE, SUITE 102**
**MORGANVILLE, NEW JERSEY 07751**

This instrument was prepared by:
**FIRST CHOICE LOAN SERVICES, INC**
**500 CAMPUS DRIVE, SUITE 102**
**MORGANVILLE, NEW JERSEY 07751**

Preparer: _Emanuel Oi Eza_ , _EMANUELA M BOYER_
_____
[Space Above This Line for Recording Data]

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS That **FIRST CHOICE LOAN SERVICES, INC**,
whose address is **500 CAMPUS DRIVE, SUITE 102, MORGANVILLE, NEW JERSEY 07751**, the Mortgagee in a
certain mortgage,
dated the 2nd day of February, 2012, executed by **Bill W. Haney and Sheila B. Haney, husband and wife as Joint
Tenants**, and duly filed for record in the Office of the **Jefferson** County Court Clerk, **Jefferson**, Kentucky, on the
_17_ day of _FEBRUARY, 2012_ , duly recorded in Mortgage Book _12724_
Page _0584_ , Tax Parcel ID Number: 2126160027000 in consideration of the sum of SEVEN
HUNDRED TEN THOUSAND AND NO/100 Dollars ($710,000.00), to them in hand paid, the receipt of which is
hereby acknowledged, does hereby sell, assign, transfer, set over, and covey unto _ING Bank FSB_
_3074 Ave South_
_St. Cloud, MN 56301_

its successors, and assigns, said mortgage, the real estate conveyed, and Promissory Note, debts, and claims thereby
secured, and covenants therein contained. More fully described as follows:

See attached Exhibit "A"

which currently has the address of: 2902 DOTSON DRIVE, Louisville, KENTUCKY 40223

TO HAVE AND TO HOLD THE SAME, forever, subject, nevertheless, to the conditions therein contained.

KENTUCKY Assignment of Mortgage                                1/06

IDS, Inc                         Page 1 of 2

0809904PG0147

IN WITNESS WHEREOF, **FIRST CHOICE LOAN SERVICES, INC,** has caused this instrument to be signed by Joseph Baio its SVP – Capital Markets and attested by its and its corporate seal to be affixed hereto this ___2___ day of FEBRUARY , 2012 .

**FIRST CHOICE LOAN SERVICES, INC**

By: Joseph Baio
Its: SVP – Capital Markets

Witness
Typed Name: Patricia McGowarteta

Witness
Typed Name: EMANUELA M BOYER

State of New Jersey
County of Monmouth

The foregoing instrument was acknowledged before me this ___2___ day of February 2012 by Joseph Baio, SVP – Capital Markets, of **FIRST CHOICE LOAN SERVICES, INC,** a corporation organized under the laws of **The State of New Jersey,** and that for and on behalf of the said corporation, and as its act and deed he/she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

**Kathy E. LaBarbera**
**Notary Public State of New Jersey**
**My Commission Expires**
**June 3, 2014**

KENTUCKY Assignment of Mortgage                                1/06
                        Page 2 of 2
IDS, Inc.

DB 09904 PG 0148

MB 12724 PG 0597



## OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

COMMITMENT
SCHEDULE A
continued

*Exibit*

### LEGAL DESCRIPTION

All that certain lot or parcel of land situate in the County of Jefferson, Commonwealth of Kentucky, and being more particularly described as follows:

Being Lot 27, Nutwood Subdivision, Section 2, plat of which is of record in Plat and Subdivision Book 37, Page 78, in the Office of the Clerk of Jefferson County, Kentucky

Being the same property conveyed by Warranty Deed:

| | |
|---|---|
| Grantor: | Amos Marin Construction Co. |
| Grantee: | Bill W. Haney and Sheila B. Haney, husband and wife |
| Dated: | 12/28/1990 |
| Recorded: | 12/31/1990 |
| Doc#/Book-Page: | 6024-848 |
| Address: | 2902 Dotson Drive, Louisville, KY 40223 |

```
Document No.: DN2012089584
Lodged By: first chioce
Recorded On:   06/22/2012      11:01:41
Total Fees:             13.00
Transfer Tax:            .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: CARHAR
```

END OF DOCUMENT

END OF DOCUMENT

ORT Form 4308 A
Schedule A
Commitment (6/17/2006)



| | FFIEC home \| Federal Reserve Board home |
| | Accessibility \| Disclaimer \| Privacy Policy |

| NIC Home | Institution Search | USBA Search | HCs > $10B |
|---|---|---|---|
| BHCPR Peer Reports | Other Reports | FAQ | |

**Institution History for** ING BANK, FSB (2933616)

2 institution history record(s) found.

< Previous  Page [1 ▽] Next >

| Event Date | Historical Event |
|---|---|
| 2000-08-04 | ING BANK, FSB located at 1 SOUTH ORANGE STREET, WILMINGTON, DE was established as a Federal Savings Bank. |
| 2012-11-01 | ING BANK, FSB was **acquired by** CAPITAL ONE, NATIONAL ASSOCIATION. |

Page 1 of 1

NIC Home | FAQ | Help | Contact Us

DEED Book 11229 Page 297



# Bobbie Holsclaw

## Jefferson County Clerk's Office

As evidenced by the instrument number shown below, this document
has been recorded as a permanent record in the archives of the
Jefferson County Clerk's Office.



JEFFERSON CO, KY FEE $13.00
PRESENTED ON: 08-24-2018 8 09:07:21 AM
LODGED BY: CORELOGIC SOLUTIONS LLC
RECORDED: 08-24-2018 09:07:21 AM
BOBBIE HOLSCLAW
CLERK
BY: ROXANN MCGAUGHEY
RECORDING CLERK
**BK: D 11229**
**PG: 297-299**

527 W Jefferson St ~ Louisville, KY 40202  (502) 574-5700

Website: www.jeffersoncountyclerk.org | Email: countyclerk@jeffersoncountyclerk.org

A52

Recording Requested By:
ROOSEVELT MANAGEMENT CO

Prepared By: Audrey Trumble

When recorded mail to:
CORELOGIC
PO BOX 9232
Connell, TX 65232

GroupNumber: N/A
Property Address:
2902 DOTSON DRIVE
LOUISVILLE, KY 40223

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, Capital One, National Association, as successor in interest upon merger with ING Bank, FSB, by Rushmore Loan Management Services LLC, its appointed Attorney-In-Fact, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1680 CAPITAL ONE DRIVE, MCLEAN, VA 22102 does hereby grant, sell, assign, transfer and convey unto U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust Series 2016 CTT whose address is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Mortgagee: | FIRST CHOICE LOAN SERVICES, INC |
| Borrower(s): | BILL W. HANEY AND SHEILA B. HANEY, HUSBAND AND WIFE AS JOINT TENANTS |
| Date of Mortgage: | 2/2/2012 |
| Original Loan Amount: | $710,000.00 |

Recorded in Jefferson County, KY on: 2/17/2012, book 12724, page 0584 and instrument number DN2012023640

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on:
MAY 1 8 2018

Capital One, National Association, as successor in interest
upon merger with ING Bank, FSB, by Rushmore Loan
Management Services LLC, its appointed Attorney-In-Fact
By Power of Attorney recorded on 7-31-18
in Book D11809 , Page 753-759 ,
Instrument# 2018118272

By: _____
Enadia Pierce
Its:   Assistant Vice President

Witness: _____
Nicole Johnson

DEED Book 1229 Page 299

State of TX, County of **Dallas**

On __MAY 1 8 2018__, before me, ~~Stacey Burdett~~ ~~Enadia Pierce~~, a Notary Public, personally appeared **Enadia Pierce** , ~~Assistant Vice President~~ of Capital One, National Association, as successor in interest upon merger with ING Bank, FSB, by Rushmore Loan Management Services LLC, its appointed Attorney-In-Fact personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person (s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: ~~Stacey Burdett~~

My Commission Expires : ____9/21/2021

STACEY BURDETT
Notary Public, State of Texas
Comm. Expires 09-21-2021
Notary ID 131289531

END OF DOCUMENT